IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | BANKRUPTCY CASE |
| | § | NO. 04-42431 |
| MEIR WERBER | § | |
| SS#   -  -1485 | § | |
| Debtor | § | CHAPTER 7 |
| _____ | § | |
| | § | |
| MAURICE TZORFATI, | § | |
| Plaintiff | § | ADVERSARY CASE |
| | § | NO._____ |
| | § | |
| v. | § | |
| | § | |
| MEIR WERBER, | § | |
| Defendant | § | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

TO THE HONORABLE JUDGE OF THE UNITED STATES BANKRUPTCY COURT:

MAURICE TZORFATI, ("the Plaintiff") a judgment creditor of Meir Werber, ("the Debtor") files this Complaint to Determine Dischargeability of Debt. As grounds therefore, the Plaintiff shows as follows:

**1.0.   STATEMENT OF JURISDICTION AND RELIEF SOUGHT.**

1.1. The Plaintiff brings this Adversary Proceeding to Determine Dischargeability of Debt in the Debtor's Voluntary Bankruptcy Petition, Case No. 04-42431 (the"Bankruptcy").  The Bankruptcy was filed on September 2, 2004, as a

Chapter 13 case in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. On or about September 17, 2004, the case was converted to a Chapter 7.

1.2. Venue is proper in this District and Division.

1.3. This Court has jurisdiction over this adversary proceeding, and this is a core proceeding pursuant to 28 U.S.C. §§ 157(a)(2)(I) and 1334, and a determination of the dischargeability of the debt to Plaintiff is sought pursuant to 11 U.S.C. § 523(a)(6).

**2.0. STATEMENT OF FACTS**.

2.1. The Plaintiff is a judgment creditor of the Debtor by virtue of a final judgment entered by Judge Hittner in Civil Action No. H-02-4946, United States District Court, Southern District of Texas, Houston Division. (the "Judgment"). The Judgment was entered against three Isreali immigrants, Shelomo Moussali ("Moussali"); Marlan Simon ("Simon") and Meir "Mike" Werber ("the Debtor"). The Debtor was found jointly and severally liable to the Plaintiff with the other defendants to the Plaintiff in the amount of $282,000.00 in actual damages, and solely liable for $300,000.00 in punitive damages.

2.2. The Judgment arises of the threats set forth in the Amended Complaint, which were to murder and maim the Plaintiff in connection with the Plaintiff's ill-fated investment in the Defendants scheme to develop an airline gambling service from

Israel to the United States. The reign of terror culminated in May of 2002, when acting at the direction of the Debtor, Simon and Moussali traveled with the Debtor from Houston, Texas, to Florida, and threatened the Plaintiff with threats of slit throats, mayhem and bodily harm. Both Simon and Moussali later plead guilty to felony extortion by threats, and were sentenced to five years in the Florida penitentiary.

2.3. The Plaintiff filed suit against the the Defendants in the United States District Court for the Southern District of Texas. Werber, represented by counsel, appeared and participated in the jury trial. Moussali and Simon, although served with the Summons and the Amended Complaint, did not participate in the trial. A jury was selected, sworn, and empanelled by the remaining parties on July 30, 2004, and the trial began. The case proceeded to trial on the allegations contained in the Plaintiff's First Amended Original Complaint, Application for Injunction, and Jury Demand.

2.4. Witnesses, including Werber and his wife, Linda Werber, and the Plaintiff, were sworn, testimony was taken and evidence received, including transcripts of deposition of the parties, and documents and deposition testimony from law enforcement officers from Broward County, State of Florida. At the conclusion of the evidence, the Charge of the Court, with definitions and jury questions defining assault, battery, extortion, intentional infliction of emotional

distress, civil conspiracy, damages, punitive damages, existence of a contract, breach, duress and damages and the commission of those acts.

2.5. The Jury, receiving the following instructions from Judge Hittner, answered the following jury questions in the affirmative with regard to all of the Defendants.

### 2.5.1. "EXTORTION

Did Shelomo Moussali or Marian Simon or Meir Werber commit the act of extortion against Maurice Tzorfati?

> Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall commit extortion."

### 2.5.2. "INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Did Shelomo Moussali or Marlan Simon or Meir Werber intentionally inflict severe emotional distress on Maurice Tzorfati?

> Intentional infliction of emotional distress occurs when the wrongdoer's conduct was: 1) intentional or reckless, that is he intended the behavior when he knew or should have known that emotional distress would likely result; 2) the conduct was outrageous; 3) the conduct caused emotional distress; and 4) the emotional distress was severe.

...

Conduct is outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community.

Conduct is particularly outrageous where children or family members who have nothing to do with the relationship between a plaintiff and the tortfeasors are threatened with harm."

2.5.3. "**CIVIL CONSPIRACY**

If you answered "yes" as to any defendant with respect to assault, battery, extortion or intentional infliction of emotional distress, then answer the following question.

Were Shelomo Moussali and Marlan Simon and Meir Werber part of a civil conspiracy that damaged Maurice Tzorfati?

To be part of a conspiracy, Meir Werber, Shelomo Moussali and Marlan Simon must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to Maurice Tzorfati. Each of the persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

2.6.   The Charge of the Court was filed of record, docket entry # 70, on August 5, 2004.  The Order of Judgment was signed and entered on August 6, 2004 and incorporates the jury's answers as set out above.

2.7.   This bankruptcy, filed less than 30 days after the entry of the Judgment, is a last ditch effort by a desperate but ill-advised Debtor to avoid the effect of Plaintiff's First Amended Original Complaint, the Charge of the Court, the jury verdict, and the Judgment.

**3.0. THE DEBT IS NON-DISCHARGEABLE UNDER 11 U.S.C. § 523(a)(6)**

3.1. Section 523(a)(6) of the Bankruptcy code excepts from discharge a debt for a willful and malicious injury by the Debtor to another person. The United States Supreme Court has established guidelines for determining whether a debt arises from a willful and malicious injury and, therefore, is excepted from discharge under Section 523(a)(6). *See, Kawaauhau v. Geiger*, 523 U.S. 57, 59, 118 S. Ct. 974, 975-76, 140 L. Ed. 2d 90 (1998)

3.2. **The Actions of Werber were Intentional.** In *Kawaauhau*, the Court found that the language of Section 523(a)(6) applies to "acts done with the actual intent to cause injury," but excludes intentional acts that cause injury. *Id.* at 61, 118 S. Ct. at 977. The Fifth Circuit has held that for a debt to be non-dischargeable, a debtor must have acted with "...objective substantial certainty or subjective motive" to inflict injury. *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998).

3.3. A harmful result, intentionally done, is the essence of extortion and intentional infliction of emotional distress, and that intent satisfies the requirement of §523(a)(6). There is no way around the ultimate conclusion that under the facts plead in the Amended Complaint, the testimony at the trial, the Charge of the Court, and the answers and findings of the jury, the Debtor deliberately and intentionally injured the Plaintiff. The doctrine of collateral estoppel prohibits the Defendant from

contesting the finding of the jury regarding his intent. *See, Wright v. Turner (In re Turner), 204 B.R. 988, 994 (9th Cir. BAP 1997)*(applying collateral estoppel to a state court judgment because each of the five causes of action in the state court complaint alleged facts sufficient to satisfy § 523(a)(6)).

3.4. **The Actions of Werber were Malicious.** With regard to the meaning of "malicious," the *Miller* court concluded Section 523(a)(6) creates an "implied malice standard." Id. at 605. A debtor acts with implied malice when he acts "with the actual intent to cause injury." *Id.* at 606 (citation omitted). This definition of implied malice is identical to the *Kawaauhau* Court's explanation of a willful injury. *Id.* The test for willful and malicious injury under Section 523(a)(6), thus, is condensed into a single inquiry of whether there exists "...either an objective substantial certainty of harm or a subjective motive to cause harm" on the part of the debtor. *Id. See also, Texas v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998) (stating "'for willfulness and malice to prevent discharge under §523(a)(6), the debtor must have intended the actual injury that resulted . . .' Intent to injure may be established by showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury.'" (citing *In re Delaney,* 97 F.3d 800, 802 (5th Cir. 1996)).

3.5. The willful acts by the Debtor and his co-conspirators, Moussali and Simon, to extort money and to intentionally inflict emotional distress and fear have been adjudicated to have been done with actual malice. The facts and evidence

supporting the findings that the intentional, malicious, actions of the Defendant caused damage to the Plaintiff were fully and fairly litigated under the supervision of Judge Hittner. Under the application of Bankruptcy Law to those facts and findings, the entire Judgment awarded Plaintiff in the District Court action is *res adjudicata* and issue preclusion on the jury finding that the intentional and malicious acts of the Debtor, resulted in the injury and damages to the Plaintiff, and supports the entry of Judgment against the Debtor, and the award of damages of the non-dischargeable debt under 11 U.S.C. § 523(a)(6), including principal, interest, attorney's fees and punitive damages.

**4.0. SUMMARY, CONCLUSION AND PRAYER.**

4.1. The Plaintiff requests that the Court determine that the Judgment debt owed by the Debtor to the Plaintiff is nondischargeable under 11 U.S.C.§ 523(a)(6);

4.2. The Plaintiff requests the Court to find and determine that the act or acts of the Defendant which resulted in the injury to Plaintiff were intentional, willful and malicious, and render judgment for Plaintiff for the amount of his judgment, plus interest and attorney's fees; and that he have such other and further relief as is just, in law and in equity; and

4.3. The Plaintiff requests any other relief to which he may be entitled.

Respectfully Submitted:

**LAW OFFICES OF PETER J. STANTON**
Riverview Towers, Suite 1350
111 Soledad Street
San Antonio, Texas 78205
Telephone (210) 472-0500
Telecopier (210) 472-0515

**LAW OFFICES OF RONALD J. JOHNSON**
Riverview Towers, Suite 1350
111 Soledad Street
San Antonio, Texas 78205
Telephone:  (210) 472-0500
Telecopier: (210) 472-0515


By: *Ronald J. Johnson*
    **RONALD J. JOHNSON**
    State Bar No. 10787500

**ATTORNEYS FOR MAURICE TZORFATI**